Justice Stevens,
with whom Justice Ginsburg joins as to all but Part II, concurring.
It is no secret that the Court’s remedial opinion in United States v. Booker, 543 U. S. 220 (2005), was not unanimous. See id., at 272 (Stevens, J., dissenting). But Booker is now settled law and must be accepted as such. See B. Cardozo, The Nature of the Judicial Process 149 (1921) (“[T]he labor of judges would be increased almost to the breaking point if *361 every past decision could be reopened in every case, and one could not lay one’s own course of bricks on the secure foundation of the courses laid by others who had gone before him”). Therefore, our task today is to apply Booker’s “reasonableness” standard to a District Judge’s decision to impose a sentence within the range recommended by United States Sentencing Guidelines that are now advisory, rather than binding.
I
Simply stated, Booker replaced the de novo standard of review required by 18 U. S. C. § 3742(e) with an abuse-of-discretion standard that we called “ ‘reasonableness’ ” review. 543 U. S., at 262. We noted in Booker that the de novo standard was a recent addition to the law. Prior to 2003, appellate courts reviewed sentencing departures for abuse of discretion under our decision in Koon v. United States, 518 U. S. 81 (1996). In 2003, however, Congress overruled Koon and added the de novo standard to § 3742(e). See Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, § 401(d)(1), 117 Stat. 670. Recognizing that “the reasons for th[is] revisio[n] — to make Guidelines sentencing even more mandatory than it had been— . . . ceased to be relevant” in light of the Court’s constitutional holding,[1] Booker excised the portion of § 3742(e) that directed courts of appeals to apply the de novo standard. 543 U. S., at 261. Critically, we did not touch the portions of § 3742(e) requiring appellate courts to “give due regard to the opportunity of the district court to judge the *362 credibility of the witnesses,” to "accept the findings of fact of the district court unless they are clearly erroneous,” and to "give due deference to the district court’s application of the guidelines to the facts.” By leaving those portions of the statute intact while severing the portion mandating a de novo standard of review, Booker restored the abuse-of-discretion standard identified in three earlier cases: Pierce v. Underwood, 487 U. S. 552, 558-560 (1988), Cooter & Gell v. Hartmarx Corp., 496 U. S. 384, 403-405 (1990), and Koon. See Booker, 543 U. S., at 260.[2]
In Pierce, we considered whether the District Court had properly awarded attorney’s fees based on a determination that the Government’s litigation position was not “substantially justified” within the meaning of the Equal Access to Justice Act, 28 U. S. C. § 2412(d). Because the Act did not specify a standard of review, we found it necessary to rely on several “significant relevant factors” that persuaded us to apply an “ ‘abuse of discretion’ ” standard. 487 U. S., at 559. One factor was that a district judge was “‘better positioned’ ” than an appellate judge to decide the issue. Id., at 560 (quoting Miller v. Fenton, 474 U. S. 104, 114 (1985)). We noted that a district court, through its participation in “settlement conferences and other pretrial activities,” “may have insights not conveyed by the record, into such matters as whether particular evidence was worthy of being relied upon.” 487 U. S., at 560. We likewise noted that “even where the district judge’s full knowledge of the factual set *363 ting can be acquired by the appellate court, that acquisition will often come at unusual expense.” Ibid. A second factor that we found significant was the impracticability of formulating a rule of decision for an issue that may involve “ ‘multifarious, fleeting, special, narrow facts that utterly resist generalization.’ ” Id., at 561-562. In Cooter & Gell, we held that both of these factors supported an “abuse-of-discretion” standard for review of a district judge’s imposition of sanctions for violations of Rule 11 of the Federal Rules of Civil Procedure. See 496 U. S., at 403-405. A third factor, the District Court’s special knowledge about “the local bar’s litigation practices,” also supported the abuse-of-discretion standard. Id., at 404. We further noted that “[djeference to the determination of courts on the front lines of litigation will enhance these courts’ ability to control the litigants before them.” Ibid.
Recognizing that these factors bear equally upon a trial judge’s sentencing decision, Koon expressly applied the principles of Pierce and Cooter & Gell to the sentencing context. See Koon, 518 U. S., at 99. We adopted the same abuse-of-discretion standard, unanimously holding that a district court’s decision to depart from the Guidelines “will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court.” Id., at 98. Echoing our earlier opinions, we added that “[district courts have an institutional advantage over appellate courts” because they “must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.” Ibid. We also relied on the following statement in our opinion in Williams v. United States, 503 U. S. 193 (1992):
“The development'of the guideline sentencing regime has not changed our view that, except to the extent specifically directed by statute, ‘it is not the role of an appellate court to substitute its judgment for that of the *364 sentencing court as to the appropriateness of a particular sentence.’ ” Id., at 205 (quoting Solem v. Helm, 463 U. S. 277, 290, n. 16 (1983)).
These basic considerations about the nature of sentencing have not changed in a post-Booker world. While the specific holding in Koon concerned only the scope of the trial judge’s discretion on whether to depart from the Guidelines, now that the Guidelines are no longer mandatory, our reasoning applies with equal force to the sentencing judge’s decision “ ‘as to the appropriateness of a particular sentence.’ ” Williams, 503 U. S., at 205. After Booker, appellate courts are now to assess a district court’s exercise of discretion “with regard to § 3553(a).” 543 U. S., at 261. As we explained: “Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.” Ibid.
Guided by these § 3553(a) factors, Booker’s abuse-of-discretion standard directs appellate courts to evaluate what motivated the district judge’s individualized sentencing decision. While reviewing courts may presume that a sentence within the advisory Guidelines is reasonable, appellate judges must still always defer to the sentencing judge’s individualized sentencing determination. As we stated in Koon, “[ijt has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.” 518 U. S., at 113. The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charita *365 ble, or public service are not ordinarily considered under the Guidelines. See United States Sentencing Commission, Guidelines Manual §§5Hl.l-6, 11, and 12 (Nov. 2006).[3] These are, however, matters that § 3553(a) authorizes the sentencing judge to consider. See, e. g., 18 U. S. C. § 3553(a)(1). As such, they are factors that an appellate court must consider under Booker’s abuse-of-discretion standard.
My disagreement with Justice Scalia and Justice Souter rests on the above understanding of Booker’s standard of appellate review. I do not join Justice Scalia’s opinion because I believe that the purely procedural review he advocates is inconsistent with our remedial opinion in Booker, which plainly contemplated that reasonableness review would contain a substantive component. See 543 U. S., at 260-264. After all, a district judge who gives harsh sentences to Yankees fans and lenient sentences to Red Sox fans would not be acting reasonably even if her procedural rulings were impeccable. Moreover, even if some future unusually harsh sentence might violate the Sixth Amendment because it exceeds some yet-to-be-defined judicial standard of reasonableness, Justice Scalia correctly acknowledges this case does not present such a problem. See post, at 373-374 (opinion concurring in part and concurring in judgment) (“Nor is my claim that the Sixth Amendment was violated in this case, for petitioner cannot demonstrate that his relatively low sentence would have been unreasonable if the Dis *366 trict Court had relied on nothing but jury-found or admitted facts”); see also ante, at 353-354 (“Justice Scalia concedes that the Sixth Amendment concerns he foresees are not presented by this case. Post, at 373-374 (opinion concurring in part and concurring in judgment). And his need to rely on hypotheticals to make his point is consistent with our view that the approach adopted here will not ‘raise a multitude of constitutional problems.’ Clark v. Martinez, 543 U. S. 371, 380-381 (2005)”). Such a hypothetical case should be decided if and when it arises. See, e. g., Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U. S. 464, 472 (1982).
As to Justice Souter’s opinion, I think he overestimates the “gravitational pull” toward the advisory Guidelines that will result from a presumption of reasonableness. Post, at 390 (dissenting opinion). Booker’s standard of review allows — indeed, requires — district judges to consider all of the factors listed in § 3553(a) and to apply them to the individual defendants before them. Appellate courts must then give deference to the sentencing decisions made by those judges, whether the resulting sentence is inside or outside the advisory Guidelines range, under traditional abuse-ofdiseretion principles. As the Court acknowledges, moreover, presumptively reasonable does not mean always reasonable; the presumption, of course, must be genuinely rebuttable. See ante, at 347. I am not blind to the fact that, as a practical matter, many federal judges continued to treat the Guidelines as virtually mandatory after our decision in Booker. See post, at 373-374, n. 3 (Scalia, J., concurring in part and concurring in judgment). One well-respected federal judge has even written that, “after watching this Court — and the other Courts of Appeals, whether they have formally adopted such a presumption or not — affirm hundreds upon hundreds of within-Guidelines sentences, it seems to me that the rebuttability of the presumption is more theoretical than real.” United States v. *367 Pruitt, No. 06-3152, 2007 U. S. App. LEXIS 12872, *35-*36 (CA10, June 4, 2007) (McConnell, J., concurring). Our decision today makes clear, however, that the rebuttability of the presumption is real. It should also be clear that appellate courts must review sentences individually and deferentially whether they are inside the Guidelines range (and thus potentially subject to a formal “presumption” of reasonableness) or outside that range. Given the clarity of our holding, I trust that those judges who had treated the Guidelines as virtually mandatory during the ipost-Booker interregnum will now recognize that the Guidelines are truly advisory.
Applying this standard, I would affirm the sentence imposed by the District Court. Although I would have imposed a lower sentence had I been the District Judge, I agree that he did not abuse his discretion in making the particular decision that he did. I also agree with the Court that his decision is entitled to added respect because it was consistent with the advice in the Guidelines.
II
That said, I do believe that there was a significant flaw in the sentencing procedure in this case. The petitioner is a veteran who received significant recognition for his service to his country. That aspect of his background is not taken into consideration in the Sentencing Guidelines and was not mentioned by the District Judge in his explanation of his choice of the sentence that defendant received. I regard this as a serious omission because I think the judge’s statement to the defendant, made at the time of sentencing, is an especially important part of the criminal process. If the defendant is convinced that justice has been done in his case — that society has dealt with him fairly — the likelihood of his successful rehabilitation will surely be enhanced. Nevertheless, given the importance of paying appropriate respect to the exercise of a sentencing judge’s discretion, I join the Court’s opinion and judgment.

 See 543 U. S., at 233 (opinion for the Court by Stevens, J.) (“We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act of 1984] the provisions that make the Guidelines binding on district judges” (citations omitted)).

 In fact, Booker expressly equated the new “reasonableness” standard with the old abuse-of-discretion standard used to review sentencing departures. See id,., at 262 (“‘Reasonableness’ standards are not foreign to sentencing law. The Act has long required their use in important sentencing circumstances — both on review of departures, see 18 U. S. C. § 3742(e)(3) (1994 ed.), and on review of sentences imposed where there was no applicable Guideline, see §§ 3742(a)(4), (b)(4), (e)(4)” (emphasis added)).

 See also Breyer, The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest, 17 Hofstra L. Rev. 1,19-20 (1988) (“The Commission extensively debated which offender characteristics should make a difference in sentencing; that is, which characteristics were important enough to warrant formal reflection within the Guidelines and which should constitute possible grounds for departure.... Eventually, in light of the arguments based in part on considerations of fairness and in part on the uncertainty as to how a sentencing judge would actually account for the aggravating and/or mitigating factors . . . the current offender characteristics rules look primarily to past records of convictions”).